**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| DAVID MORRIS,      )<br>    Plaintiff,     )<br>                   )<br>v.                 )<br>                   )<br>SOUTHERN INTERMODAL XPRESS, )<br>ASSURANT EMPLOYEE BENEFITS, )<br>and UNION SECURITY INSURANCE )<br>COMPANY,           )<br>    Defendants.    ) | CIVIL ACTION NO. 16-00632-CG-N |

**REPORT AND RECOMMENDATIONS**

This action is before the Court on the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 5) filed by Defendant Southern Intermodal Xpress ("SIX"). The Court has referred the motion (Doc. 5) to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a).  *See* S.D. Ala. GenLR 72(b); (1/31/2017 electronic reference).

Plaintiff David Morris, who is proceeding without counsel (i.e. *pro se*) has timely filed a brief response in opposition to the motion asserting, incorrectly, that SIX "has not offered any ERISA/insurance case law or authority to support its position" and that the motion should therefore be denied.  (*See* Doc. 20).  SIX has timely filed a reply to the response.  (*See* Doc. 21).  The motion is now under submission (*see* Doc. 9) and is ripe for disposition.  Upon consideration, the undersigned finds that SIX's Rule 12(b)(6) motion to dismiss (Doc. 5) is due to be **GRANTED**.  However, the undersigned also finds that Morris should be given an opportunity to amend his complaint to plausibly state a claim against SIX.

**I.     STANDARD OF REVIEW**

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim

upon which relief can be granted," the Court must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *E.g.*, *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013). "Fed. R. Civ. P. 8(a)(2) requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation omitted). " 'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* at 1289 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)). A complaint's " '[f]actual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). While this "plausibility standard is not akin to a 'probability requirement' at the pleading stage, … the standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Moreover, " 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.' " *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the plausibility standard, " 'where

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show [n]"—"that the pleader is entitled to relief." ' " *Id.* (quoting *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2))). *Iqbal* "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679).

The undersigned is mindful of the admonition that a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ((citation and quotations omitted)). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).

## II.   ANALYSIS

Morris brings this civil action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, 29 U.S.C. §§ 1001–1461.  (*See* Doc. 1).  Though he does not specify what ERISA provision(s) he is proceeding under, he asserts that "the acts complained of in this suit concern…failure to pay…the beneficiary proceeds pursuant to an ERISA policy" and that he "seek[s] death benefits as the named beneficiary for the life insurance policy invoked pursuant to the ERISA policy attached

hereto." (*Id.* at 2 – 3, ¶¶ 1, 10).   Accordingly, the undersigned construes the complaint as asserting a claim under 29 U.S.C. § 1132(a)(1)(B) "to recover benefits due to [Morris] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan…" *See Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004) ("Section 502(a)(1)(B) empowers ERISA participants and beneficiaries to bring a civil action in order to recover benefits, enforce rights to benefits, or clarify rights to future benefits due under the terms of an ERISA-governed welfare benefit plan. 29 U.S.C. § 1132(a)(1)(B)…").  SIX, Morris's employer, asserts that Morris's complaint is due to be dismissed against it because it is not a proper party defendant for such a claim.

> Although § 1132(a)(1)(B) specifies that only plan participants and beneficiaries may bring a cause of action for unpaid benefits, the statute does not address who is a proper defendant to this cause of action. *See* 29 U.S.C. § 1132(a)(1)(B); *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246, 120 S. Ct. 2180, 147 L. Ed. 2d 187 (2000) (explaining that similar provision in § 1132(a)(3) "makes no mention at all of which parties may be proper defendants").

*Griffin v. Suntrust Bank, Inc.*, 648 F. App'x 962, 965 (11th Cir. 2016) (per curiam) (unpublished).

In *Rosen v. TRW, Inc.*, 979 F.2d 191 (11th Cir. 1992), the Eleventh Circuit Court of Appeals, noting that it had "never addressed the question whether an employer who takes an active part in the administration of a plan can be held liable for ERISA claims[,]"  held that "if a company is administrating the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document." 979 F.2d at 193–94.  Approximately four-and-a-half years later, the Eleventh Circuit, relying in part on *Rosen*, held that "[t]he proper party defendant in an action concerning ERISA

benefits is the party that controls administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. June 10, 1997) (per curiam) (citing, among other authority, *Rosen*, 979 F.2d at 193-94, as standing for the proposition that "a company that administers the plan can be held liable for ERISA violations").

Though *Rosen* stated that the ERISA action at issue was one "to compel benefits," the opinion did not expressly identify what ERISA provision(s) the plaintiff was proceeding under, and much of the substantive discussion leading up to its holding that employers could be held liable concerned ERISA claims for money damages. In particular, *Rosen* noted:

> ERISA provides that a money judgment against an employee benefit plan is only enforceable against the plan as an entity, unless liability against some other person is established. 29 U.S.C. § 1132(d)(1). Liability against some other person can be established by proof that the person is a plan administrator and thus responsible for decisions regarding benefits. ERISA defines the term "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16). If the plan does not designate an administrator, the employer can be deemed to be the plan administrator. *Id.* The statute is silent as to whether liability would attach to the employer if the named administrator is not solely responsible for the administration of the plan and the employer retains some control over decisions regarding benefits.

*Rosen*, 979 F.2d at 192. *Rosen*'s relevant holding was also based primarily on the First Circuit's reasoning in *Law v. Ernst & Young*, 956 F.2d 364 (1st Cir. 1992), which concerned a claim "for failing to provide information about plan benefits as required by § 1132(c) of ERISA[,]" a provision that expressly allows for money judgments against plan administrators. *Rosen*, 979 F.2d at 193.

Approximately five years after *Rosen* was issued, the Eleventh Circuit held that actions such as this one to recover ERISA benefits under 29 U.S.C. § 1132(a)(1)(B) are

"equitable in nature[;]" therefore, money judgments and other "legal relief" are not available for such actions. *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 907-08 (11th Cir. Aug. 5, 1997). Instead, the equitable relief available is "an order enjoining the payment of benefits from an ERISA plan[,]" and such an order "must issue against a party capable of providing the relief requested." *Id.* at 908. *Hunt* also held that the ERISA's provision that a money judgment against an employee benefit plan is only enforceable against the plan as an entity unless liability against some other person is established, by then recodified at 29 U.S.C. § 1132(d)(2), "contemplates legal relief and does not apply to an action to recover benefits under" § 1132(a)(1)(B). *Id.* at 908 n.54.

Despite *Hunt*'s holdings, the Eleventh Circuit later expressly applied *Rosen*'s reasoning to a claim for recovery of ERISA benefits under § 1132(a)(1)(B) asserted against an employer, holding as follows:

> ERISA provides that a "civil action may be brought by a participant or beneficiary ... to recover benefits due ... under the terms of [the] plan." *See* 29 U.S.C. § 1132(a)(1)(B). In the Eleventh Circuit, this section confers a right to sue the plan administrator for recovery of benefits. *See Rosen v. TRW, Inc.,* 979 F.2d 191, 193–94 (11th Cir. 1992). Therefore, if the employer is administering the plan, then it can be held liable for ERISA violations. *See id.* at 193–94. Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document. *See id.* at 193.
>
> The key question on this issue is whether [the employer] had sufficient decisional control over the claim process that would qualify it as a plan administrator under *Rosen*. This requires an analysis of the facts surrounding the administration of the disability plan.

*Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001). *Hamilton* further noted that the law of this Circuit permits a finding of co-plan administrators for

purposes of ERISA liability. *See id.* ("Allen points to law in other circuits which does not allow for the employer to be designated as a co-plan administrator for the purposes of liability. Because there is law going in the opposite direction in this circuit, we are bound to follow the law of our circuit and Allen's argument is without merit." (citations omitted)). *Cf. Rosen*, 979 F.2d at 192 (ERISA "is silent as to whether liability would attach to the employer if the named administrator is not solely responsible for the administration of the plan and the employer retains some control over decisions regarding benefits.").

SIX, which admits that it is Morris's employer, argues that written documents included as exhibits to Morris's complaint demonstrate that it cannot be considered a plan administrator for purposes of liability under § 1132(a)(1)(B).[1] At first blush, this assertion appears to be contradicted by SIX's concession that it is identified as the "Plan Administrator" in the copy of the subject policy attached to the complaint. *See* (Doc. 1 at 53 [Assurant Policy 5475988, p. 33]; Doc. 5 at 2). However, SIX points to other provisions in the policy that it argues "contradict th[is] designation in the plan document" and demonstrate that it is not a "party capable of providing the relief requested":

1. Page 36 of the policy, setting out "Claims Procedure," states that, to present a claim for benefits, a claimant must do the following: "Contact your plan administrator, who will advise you of any forms which are required. These

---

[1] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). *See also Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam) ("Under Rule 10(c) Federal Rules of Civil Procedure, … attachments[ to a complaint] are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."). Thus, the Court can consider the documents Morris has attached to his complaint in deciding the present motion.

forms should be returned to the Plan Administrator after completion. This Administrator will review them, complete any information concerning eligibility and forward them to Union Security Insurance Company." After "receipt by Union … of a properly executed, complete proof of loss[,]" Union will then issue a decision to approve or deny the claim. Under the subheading "Authority" on in "Claims Procedure," the policy states: "Union Security Insurance Company has the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Policy. All determinations and interpretations made by Union Security Insurance Company are conclusive and binding on all parties." (*See* Doc. 1 at 12).

2. Pages 28 and 37 of the policy sets out similar procedures for review of a claim denial, with the Plan Administrator forwarding the appropriate paperwork to Union and Union then making the decision. (*See id.* at 11, 48). However, unlike an initial claim for benefits, a claimant is not required to submit a request for review to the Plan Administrator, but only "may make a request to the Plan Administrator[,]" who will then "forward the request to Union…" Page 28 of the policy also states, under the subheading "Authority": "We have the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy. All determinations and interpretations made by us are conclusive and binding on all parties." (*Id.* at 48). On page 3, the policy expressly defines "[w]e, us, and our" as meaning "Union Security Insurance Company." (*Id.* at 23).

3. On page 30 of the policy, which sets out "General Provisions," under the

subheading "Agency" the policy specifies: "Neither the policyholder, any employer, any associated company, nor any administrator appointed by the foregoing is our agent."  (*Id.* at 50).

In addition to the policy, SIX cites copies of both the initial decision denying benefits (Doc. 3 at 5 – 7) and the unfavorable decision reviewing the initial denial  (Doc. 1 at 5 – 8) that Morris has also attached to his complaint, both of which state at the bottom that they were issued by Union agents acting under the Union "brand name" Assurant Employee Benefits (also a named defendant in this action).2

In *Hamilton*, the court found that, under the following set of facts as compared with "the factual inquiry outlined in *Rosen*, sufficient indicators … point[ed] to [employer] Allen as a plan administrator":

> The first fact is that the plan booklet states that any claim must be made to[ disability insurer] UNUM.   This would seem to cut in Allen's favor.
>
> However, Hamilton offers testimony … to the effect that Allen requires its employees to go through its human resources department in order to obtain an application for disability benefits. This fact places Allen in sufficient control over the process to qualify as the plan administrator notwithstanding the language of the plan booklet. *See Law v. Ernst & Young,* 956 F.2d 364, 373–74 (1st Cir. 1992). Moreover, Allen's benefit choice booklet states: "Plan Administrator–Manager, Employee Benefit Programs, Allen Bradley Company,.... The Plan Administrator has designed the identified insurance companies *and* the Allen Bradley Company as its agents to administer the Plan, to process all claims and appeals, and to provide other administrative services." (Emphasis added). Hamilton points out that Allen did carry out its administrative

---

2 Union's answer represents that it has been "incorrectly also referred to as 'Assurant Employee Benefits' in the Complaint" and that Assurant "is a trade name under which Union Security does business" and "is not a separate legal entity distinct from Union Security."  (Doc. 15 at 1).  At present, the undersigned expresses no opinion as to whether Assurant is a proper party to this action.   For purposes of the present motion, any reference herein to Union also includes Assurant.

> designation by handing out the claim forms itself without getting prior permission from UNUM, and by fielding questions about the plan from employees. Hamilton also includes a[ deposition] excerpt ... that identifies Milwaukee (Allen's headquarters) as the headquarters of the plan administration.

244 F.3d at 824. The factual background in *Hamilton* further indicated that UNUM, not Allen, issued the decisions denying both the claim for benefits and the appeal of that initial denial, and there was no indication that Allen participated in or otherwise had any control over the actual decision-making process for determining entitlement to benefits. *See id.* at 823.

Here, the ERISA policy at issue gives Union both the sole responsibility and "the sole discretionary authority" to determine benefits, and expressly disclaims SIX as its agent in the process. Nevertheless, the plan also states that Union will only issue a decision after receipt of "a properly executed, complete proof of loss," and the plan indicates that SIX has substantial control over this submission process. Specifically the policy states that an initial claim for benefits must be submitted through SIX and that SIX is responsible for advising the claimant of the proper forms, reviewing completed forms, providing additional "information concerning eligibility" on the forms, and forwarding the completed claim application to Union for a decision. Similar to the employer in *Hamilton*, "[t]h[ese] fact[s] place[ SIX] in sufficient control over the process to qualify as the plan administrator notwithstanding the language of the plan booklet." *Id.*

Nevertheless, recent unpublished, but persuasive, Eleventh Circuit authority indicates that such a determination is not the end of the inquiry.[3] In *Griffin v.*

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they

*Suntrust Bank, Inc.*, the Eleventh Circuit, after providing an overview of Circuit case law regarding the proper defendant in a § 1132(a)(1)(B) ERISA action, determined that the ERISA plan at issue "show[ed] that [plan sponsor ]SunTrust retained authority to direct [claims administrator ]BCBSGA to pay any claim, even after BCBSGA denied the claim." 648 F. App'x at 965–66. Nevertheless, the *Suntrust* panel declined to impose liability for unpaid ERISA benefits on SunTrust, holding:

> Although SunTrust retained authority to direct BCBSGA to pay claims on an exception basis, we hold that SunTrust may not be held liable for unpaid benefits under ERISA on the facts of this case. Dr. Griffin has not alleged that she appealed BCBSGA's denial of her claim to SunTrust or that SunTrust *sua sponte* reviewed her claim. Indeed, she has not alleged that SunTrust took any action whatsoever with respect to her claim. We have previously described a cause of action under § 1132(a)(1)(B) for unpaid benefits as "akin to [a] common law breach of contract cause[ ] of action." *Jones v. Am. Gen. Life & Acc. Ins. Co.,* 370 F.3d 1065, 1069 (11th Cir.2004). Because Dr. Griffin failed to allege that SunTrust took any action with respect to her claim that would be analogous to a breach, SunTrust cannot be held liable for unpaid benefits.

*Id.* at 966.

A closer examination of *Hamilton* supports the result reached in *Suntrust*, if not under precisely the same reasoning. As noted previously, in *Hamilton*, the claimant's employer, Allen-Bradley Co., required its employees to go through its human resources department in order to obtain an application for disability benefits. However, evidence showed that when plaintiff Hamilton attempted to do so, Allen's HR director, Lee, repeatedly thwarted her efforts, first by refusing to provide a claim form and failing to inform the plaintiff of the disability insurer's identity, then by providing the claimant an

---

may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

incorrect claim form, and then by refusing to respond to further inquiries for a period of time. Lee eventually provided Hamilton the correct forms and forwarded them to the insurer, UNUM, for a decision as to benefits. UNUM "denied Hamilton's claim on the basis that Hamilton had not properly complied with the notice and proof-of-claim requirements of the policy, i.e.—Hamilton's claim was untimely." In her appeal to UNUM of that decision, Hamilton expressly argued that she "was required to go through Lee before she could file a claim, had done so in a timely fashion, but was prevented from sending UNUM her application by Lee." UNUM denied the appeal, and Hamilton filed suit against both UNUM and Allen. The district court eventually granted summary judgment in favor of both entities on Hamilton's ERISA claims, with Hamilton only appealing the ruling as to employer Allen. *See Hamilton*, 244 F.3d at 822-23.

In attempting to avoid liability for wrongful denial of benefits after being found a "plan administrator," Allen argued "that because Hamilton's claim was untimely, she has no cause of action for wrongful denial." *Id.* at 824. The *Hamilton* panel responded that "[t]he essence of this … argument is correct, but the result applies only to UNUM, and not to Allen, because there is a material dispute of fact as to whether Hamilton informed Allen during the time in which her claim request would have been timely." *Id.* In other words, the Eleventh Circuit determined that Allen was the proper party to be held responsible for wrongful denial of benefits under § 1132(a)(1)(B), rather than UNUM, because the decision to deny ERISA benefits, even though not made by Allen, was the direct result of Allen's improper claim handling.

Both the *Hamilton* and *Suntrust* results are further consistent with the First Circuit's reasoning, agreed with by the Eleventh Circuit in *Rosen*, "that when a company

holds itself out as the administrator, then it should be subject to liability 'should it fail to discharge that role in a proper way.' " *Rosen*, 979 F.2d at 193 (quoting *Law v. Ernst & Young*, 956 F.2d 364, 373 (1st Cir. 1992)). In *Hamilton*, the employer failed to properly discharge its role as a plan administrator of providing and transmitting the necessary paperwork to submit a claim. In *Suntrust*, though the company retained some discretion over the final decision to award benefits, there was no indication that the denial of benefits was actually based on the company's exercise of that discretion.

Here, nothing in the complaint's well-pleaded factual allegations or attached exhibits plausibly suggests that the denial of ERISA benefits was caused by any impropriety on SIX's part.[4] Both the initial decision denying benefits (Doc. 3 at 5 – 7) and the unfavorable decision reviewing the initial denial (Doc. 1 at 5 – 8) were issued by Union, and neither decision was based on untimeliness, incorrect or incomplete paperwork, or some other factor that would implicate SIX's handling of Morris's claim paperwork prior to transmitting it to Union for a decision. Rather, in both decisions, Union, acting pursuant to its "sole discretionary authority" to do so as provided in the ERISA plan, interpreted the terms of the policy to determine that Morris was not entitled to benefits – specifically, because the decedent did not qualify as an "eligible dependent spouse" under the policy because she was not his lawful spouse at the time of her death, and alternatively because it was unclear whether the decedent had ever been

---

[4] At most, Morris alleges that "Defendants' [sic] together and apart have failed and refused to release beneficiary proceed" and that "Defendants' conduct is wrong with respect to the fact that David Morris has not received the death policy-beneficiary benefits due…" (Doc. 1 at 2). The Court need not accept as true these bare labels and conclusions as to SIX's alleged liability in deciding the present motion.

eligible for coverage by the policy.[5]  Any improper denial of benefits would therefore be attributable to Union, not to SIX.  *See Griffin v. Lockheed Martin Corp.*, 647 F. App'x 920, 923–24 (11th Cir. 2016) (per curiam) (unpublished) ("Because the plan documents show that Lockheed lacked discretionary authority to determine Dr. Griffin's claim for reimbursement and there is no factual allegation that Lockheed actually took part in the payment of claims generally or in the denial of Dr. Griffin's claim, we hold that Lockheed was not the proper party defendant to the cause of action for unpaid benefits.").

Morris has offered no factual allegations that call into question the clear terms of the ERISA plan at issue, that plausibly suggest SIX "took any action with respect to h[is] claim that would be analogous to a breach," *Suntrust*, 648 F. App'x at 965–66, or that plausibly suggest SIX failed to discharge its role under the ERISA plan in a proper way.  *Rosen*, 979 F.2d at 193.  Rather, the exhibits attached to the complaint demonstrate that the fault for wrongful denial of benefits, if any, lies with Union. Accordingly, SIX's Rule 12(b)(6) motion to dismiss Morris's claims against it is due to be **GRANTED**.

However, the general rule in this Circuit is that, "[w]hen it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice." *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir.

---

[5] The policy provided that "[i]f an *eligible dependent* spouse is *disabled* on the day insurance would otherwise take effect, it will not take effect until the spouse is no longer *disabled*." Morris's claim statement indicated that the decedent had become disabled in 2003, and he failed to submit any additional evidence indicating that the decedent was not disabled on, or had become no longer disabled after, the June 1, 2015 policy effective date.  (*See* Doc. 1 at 6 – 7).

2010) (per curiam) (unpublished) (emphasis added) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (overruling *Bank* as to counseled parties)).  "Dismissal with prejudice is proper … if the *pro se* plaintiff has indicated that he does not wish to amend his complaint or if a more carefully drafted complaint could not state a valid claim." *Id.*  The undersigned is not convinced it is outside the realm of possibility that Morris could state a valid § 1132(a)(1)(B) ERISA claim against SIX, and at present there is no indication that Morris would not wish to do so.  Accordingly, the undersigned will recommend that Morris be granted leave to file and serve an amended complaint that plausibly alleges a claim against SIX.

### III.    CONCLUSION

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that SIX's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 5) be **GRANTED** but that Morris be granted leave to file and serve, by a set deadline, an amended complaint that plausibly alleges a claim under 29 U.S.C. § 1132(a)(1)(B) against SIX.

### IV.    NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."   11th Cir. R. 3-1.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 13th day of March 2017.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**