IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| DAVID MORRIS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | CIVIL ACTION NO. 16-0632-CG-N |
|  | ) |  |
| SOUTHERN INTERMODAL XPRESS; ASSURANT EMPLOYEE BENEFITS; UNION SECURITY INSURANCE COMPANY, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## ORDER

This matter is before the Court on a motion for judgment on the record and brief in support filed by Defendant Union Security Insurance Company ("Union Security").[1] (Doc. 43; Doc. 44). Plaintiff David Morris ("Mr. Morris") filed a response in opposition. (Doc. 46). Upon *de novo* review of the administrative record in this matter, the Court cannot say that Union Security's claim-denial is wrong because Mr. Morris's dependent life insurance coverage for Gwendolyn Morris ("Ms. Morris") ended when their divorce was finalized, which occurred approximately two months prior to her death. Additionally, Union Security's claim-denial was

---

[1] In as much as Mr. Morris names Assurant Employee Benefits as a defendant, Union Security explains that Assurant Employee Benefits is not a legal entity but a trade name under which Union Security does business. Mr. Morris offers no opposition to this point. Therefore, as much as Union Security and Assurant Employee Benefits may be separate defendants, the Court understands the Motion for Judgment on the Record to be brought by both, and this Order resolves this matter for both Union Security and Assurant Employee Benefits.

reasonable for the same reason and made without a conflict of interest. Given this and as fully explained below, the Court grants Union Security's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Mr. Morris and Ms. Morris married January 11, 2003. (Doc. 44-2, p. 2). Mr. Morris began working for Southern Intermodal Xpress ("SIX") April 4, 2011. (Doc. 44-6, p. 3). As part of Mr. Morris's employment benefits, SIX offered an employee group life insurance policy ("the Policy"), which Union Security issued and administered. *See* (Doc. 44-1, pp. 1–44). The Policy provided each employee with the opportunity to purchase life insurance for "covered dependents." The Policy defined a "covered dependent" as an "eligible dependent" insured by Mr. Morris under the Policy. (Doc. 44-1, p. 6). Under the Policy, an "eligible dependent" included (1) Mr. Morris's "lawful spouse" and (2) Mr. Morris's "unmarried children from live birth but less than age 19, or less than 25 if a full-time student." (Doc. 44-1, p. 18).

A "covered dependent's" policy coverage ends when any of five events occur: (1) the Policy ends; (2) the Policy is "changed to end dependent insurance;" (3) "the dependent is no longer eligible;" (4) an employee's "insurance for the same coverage under the policy ends;" or (5) "a required contribution for dependent insurance" goes unpaid. (Doc. 44-1, p 19). Union Security reserved "sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of" the

---

[2] Mr. Morris offers no record facts in his response or objection to the record Union Security presents. Further, Union Security's record does not differ from the attachments to the Complaint. Therefore, the Court finds Mr. Morris has no objection to the factual and administrative record Union Security presents.

Policy. (Doc. 44-1, p. 39).

At some point after he began work with SIX, Mr. Morris took out dependent life insurance coverage for Ms. Morris under the Policy. Mr. Morris and Ms. Morris separated sometime thereafter, and an Alabama court entered a judgment of divorce dissolving their marriage on September 24, 2015. (Doc. 44-3, p. 2); *see also* (Doc. 44-4, p. 2) (certificate of divorce). On November 21, 2015, Ms. Morris passed away from natural causes. (Doc. 44-5, p. 2).

Following Ms. Morris's death, Mr. Morris filed a claim against the Policy for his dependent life insurance coverage of Ms. Morris. (Doc. 44-6, p. 2). Union Security, by way Assurant Employee Benefits, a trade name under which Union Security does business, denied Mr. Morris's claim because, among other reasons, Ms. Morris "was not an eligible dependent when her death occurred …." (Doc. 44-7, p. 3). Mr. Morris appealed this determination per the Policy's appeals process. The appeal was also denied because, among other reasons, Ms. Morris's "coverage ended when she and Mr. Morris were divorced," which preceded her death. (Doc. 44-8, p. 4).

Following denial of his appeal, Mr. Morris brought the present suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. *See* (Doc. 1). As previously explained by the magistrate judge, Mr. Morris's Complaint does not specify what provision of ERISA he travels under. (Doc. 28, p. 4). But Mr. Morris does assert in the Complaint that "the acts complained of in this suit concern … failure to pay … the beneficiary proceeds

pursuant to an ERISA policy" and that he "seek[s] death benefits as the named beneficiary for the life insurance policy invoked pursuant to the ERISA policy attached hereto." (Doc. 1, pp. 2–3).

SIX moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to be dismissed from this action. (Doc. 5 ). In deciding SIX's motion, the magistrate judge interpreted the Complaint as asserting a claim pursuant to 29 U.S.C. § 1132(a)(1)(B): "recover benefits due to [Mr. Morris] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan …." (Doc. 28, p. 4) (citing *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004) ("Section 502(a)(1)(B) empowers ERISA participants and beneficiaries to bring a civil action in order to recover benefits, enforce rights to benefits, or clarify rights to future benefits due under the terms of an ERISA-governed welfare plan. 29 U.S.C. § 1132(a)(1)(B)….")) The magistrate judge recommended Mr. Morris's claim against SIX be dismissed but that Mr. Morris also be allowed an opportunity to amend his complaint as it pertained to SIX. (Doc. 28, p. 15). In reasoning that an opportunity to amend should be provided, the magistrate judge pointed to Mr. Morris's *pro se* status and explained, "The undersigned is not convinced it is outside the realm of possibility that [Mr.] Morris could state a valid § 132(a)(1)(B) ERISA claim against SIX, and at present there is no indication that [Mr.] Morris would not wish to do so." (Doc. 28, p. 15). The undersigned adopted the magistrate judge's recommendations and allowed Mr. Morris until May 15, 2017, to file any amendment as to his claim

against SIX. (Doc. 37). May 15, 2017, came and went without amendment by Mr. Morris.

Now, Union Security moves for judgment on the record. Union Security contends judgment is proper because Ms. Morris was ineligible for coverage at the time of her death. (Doc. 44, p. 2). The entirety of Mr. Morris's substantive response to Union Security's motion is as follows: "The motion filed by Defendants does not address the civil action complaint of David Morris." (Doc. 46, p. 1). The parties having stated their positions, this matter is ripe for consideration.

## II. ANALYSIS

"ERISA permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Lamb v. Hartford Life and Acc. Ins. Co.*, 862 F. Supp. 2d 1342, 1349 (M.D. Ga. 2012) (citing 29 U.S.C. § 1132(a)(1)(B)). But the "standard of review [in the ERISA context] does not neatly fit under either Rule 52 or Rule 56 [of the Federal Rules of Civil Procedure], but it is a specially fashioned rule designed to carry out Congress's intent under ERISA." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998). ERISA claims-denial cases place the district court as more of "an appellate tribunal than as a trial court." *See Curran v. Kemper Nat. Servs., Inc.*, 2005 WL 894840, at *7 (11th Cir. 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17–18 (1st Cir. 2002)). The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Id.*; *see also Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (review of

5

a plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision). Thus, there "may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would." *Pinto v. Aetna Life Ins. Co.*, 2011 WL 536443, at *8 (M.D. Fla. Feb. 15, 2011).

Under ERISA, motions under Rule 52 or under Rule 56 "are nothing more than vehicles for teeing up ERISA cases for decision on the administrative record." *See Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 813 F.3d 420, 425 n.2 (1st Cir. 2016); *see also Al-Abbas v. Metro. Life Ins. Co.*, 52 F. Supp. 3d 288, 294–96 (D. Mass. 2014) (on review of denial of ERISA benefits, where defendant moved for judgment on administrative record and plaintiff cross-moved for summary judgment, court considered record in light of parties' briefing to determine whether administrator's decision was reasonable). Therefore, notwithstanding the specific vehicle chosen, the standard of review—which requires the Court to review the administrative record—remains the same. With this in mind, the Court addresses the proper standard of review under which Mr. Morris's claim is to be analyzed.

When an ERISA plan administrator has discretionary authority to interpret a plan, a court applies the six-step *Williams*[3] framework. *Carr v. John Hancock Life*

---

[3] *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008).

6

*Ins. Co. (USA)*, --- F. App'x ---, 2017 WL 2963446, at *6 (11th Cir. 2017) (citing *Blankenship*, 644 F.3d at 1354 & n.4). Here, the Plan imparts Union Security with "sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy." (Doc. 44-1, p. 39). Under this language, Union Security had discretionary authority. Thus, the *Williams* framework applies.

The *Williams* framework directs a district court to undertake the following six-step analysis:

1. Apply the *de novo* standard to determine whether the claim administrator's benefits-denial is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

2. If the administrator's decision is in fact "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

3. If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

4. If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

5. If there is no conflict, then end the inquiry and affirm the decision.

6. If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355. A claimant of benefits bears the burden of proving entitlement under ERISA. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (per curiam).

**A. Union Security's Decision Was Correct**

As the *Blankenship* Court explained, the first step is to evaluate whether, under a *de novo* review, the claim administrator's claim denial is wrong. A plan administrator's decision is wrong if, based upon a *de novo* review, a court disagrees with an administrator's decision. *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). A reviewing court must evaluate whether it would reach the same decision as the administrator, based on the record before the administrator at the time the decision was made. In determining whether a plan administrator's decision was "wrong," a reviewing court does not give any deference to the plan administrator's decision. *Williams*, 373 F.3d at 1138. A court must instead "stand in the shoes of the administrator and start from scratch, examining all the evidence before the administrator as if the issue had not been decided previously." *Stiltz v. Metro. Life Ins. Co.*, 2006 WL 2534406, at *6 (N.D. Ga. Aug. 30, 2006), *aff'd*, 244 F. App'x 260 (11th Cir. 2007). "*De novo* review essentially requires the Court to act as an insurance adjuster and substitute its judgment for the judgment of the claims administrator." *Kinser v. Plans Admin. Committee of Citigroup, Inc.*, 488 F. Supp. 2d 1369, 1379 (M.D. Ga. 2007). "At this stage, the Court is essentially acting as a fact finder, reviewing the evidence and making a determination on its own as to whether or not Plaintiff is entitled to" the denied benefits. *Bates v. Metro. Life Ins. Co.*, 2009 WL 2355834, at *10 (M.D. Ga. July 27, 2009).

Here, the record establishes Mr. Morris and Ms. Morris married January 11,

2003. However, when Ms. Morris died November 21, 2015, the two were no longer married, as a judgment of divorce was entered by the Mobile County Circuit Court September 24, 2015. (Doc. 44-3, p. 2). In Alabama, a judgment of divorce " 'completely and finally' dissolves the marital relationship between husband and wife on the date of its entry …." *Killoug v. Flowers*, 843 So. 2d 770, 773 (Ala. Civ. App. 2002) (citing *Schurink v. United States*, 177 F.2d 809, 811 (5th Cir. 1949)). This means that Mr. Morris and Ms. Morris's marriage was inoperable as of September 24, 2015. Ms. Morris died almost two months later (November 21, 2015) no longer Mr. Morris's lawful spouse. (Doc. 44-5, p. 2). Even Ms. Morris's death certificate reflects that she was divorced from Mr. Morris on the day she died. (Doc. 44-5, p. 2).

The Policy clearly limited coverage to eligible dependents, such as a lawful spouse. (Doc. 44-1, p. 18). It has already been established that Ms. Morris ceased to be Mr. Morris's lawful spouse as of September 24, 2015. This means that as of September 24, 2015, Ms. Morris's dependent life insurance ended. *See* (Doc. 44-1, p. 19).[4] Therefore, Ms. Morris was not covered by the Plan when she died. This means that Mr. Morris was not due any monies under the Plan when he filed his

---

[4] The Court is not to be understood as opining on the issue of whether Ms. Morris's coverage was ever valid due to a possible pre-existing disability. Further, the Court does not evaluate whether Mr. Morris is due a refund in premiums for a potential disability of Ms. Morris. Premium refunds is not a question addressed in the administrative record or a basis of Union Security's denial. Moreover, even liberally reading the Complaint, Mr. Morris does not state a claim for a refund of premiums. The only mention of premiums in the Complaint relates to the fact that they were paid current when Ms. Morris died. Therefore, the Court does not address this issue, if it is even an issue.

9

claim. Mr. Morris offers no argument in contravention to this conclusion and fails to point the Court to any portion of the administrative record that calls for a different conclusion. All Morris does is argue that Union Security failed to address the claims in the Complaint. But this is incorrect. Union Security directly addresses the Complaint and offers that its claim-denial is correct. Based on the foregoing, the Court finds Union Security's claim-denial correct. Thus, Union Security's decision is due to be affirmed.

**B. Even If It Was Wrong, Union Security's Decision Was Reasonable**

Given the conclusion that Union Security's denial was correct, the undersigned's inquiry can end and need go no further. *See Blankenship*, 644 F.3d at 1355. However, as an alternative and independent ground, the Court concludes that, even assuming *arguendo* that Union Security's claim-denial decision was *de novo* wrong, Union Security would still be due judgment on the record because its decision was reasonable under the deferential "arbitrary and capricious" standard of review.

Under step two of the *Williams* framework, it is not disputed that the Plan vested Union Security with discretion to determine eligibility or interpret the Plan. *See Blankenship*, 644 F.3d at 1355. The Court must then ask, using an arbitrary and capricious standard, whether "reasonable" grounds supported the decision. *Id*. For all the reasons illustrated above, the Court concludes that Union Security's denial of Mr. Morris's claim was a reasonable decision. Thus, the final question is whether Union Security operated under a conflict of interest. *Id*.

Mr. Morris produced no evidence demonstrating that Union Security operated under a conflict of interest in denying his claim. Therefore, the claim-denial of Union Security is due to be affirmed.

## IV. CONCLUSION

In sum, Union Security's claim-denial was correct because Ms. Morris was an ineligible beneficiary under the Plan at the time of her death. Further, Union Security's decision was reasonable for the same reason, and Mr. Morris produced no evidence demonstrating a conflict of interest on the part of Union Security. Thus, the Court **GRANTS** Union Security's Motion for Judgment on the Record (Doc. 43). A separate judgment will be entered contemporaneously with this Order.

**DONE** and **ORDERED** this 14th day of September, 2017.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE